

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JOLLY PROPERTIES, INC., | § | Case No. 09-30872-H4-7 |
| | § | |
| Debtor. | § | Chapter 7 |
| | § | |

**MEMORANDUM OPINION ON THE MOTION OF TRUSTMARK NATIONAL BANK
TO ABANDON PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 544(b)[sic]**
[Docket No. 170]

## I. INTRODUCTION

Trustmark National Bank (Trustmark), a creditor and party in interest in the above-referenced Chapter 7 case, has filed a motion requesting that this Court order the Chapter 7 Trustee, Randy W. Williams (the Trustee), to abandon the estate's interest in a partnership pursuant to 11 U.S.C. § 554(b).[1] The partnership's major asset is an office condominium complex comprised of one-hundred-and-six (106) separate units (the Property). Trustmark argues that this partnership interest is of inconsequential value because the partnership has no equity. Alternatively, Trustmark asserts that the partnership interest is burdensome because while the partnership interest remains property of the estate, the partnership will be unable to accept offers to purchase condominium units, the sale proceeds from which would be used to reduce the balance of the debt owed to Trustmark. This second argument rests on the notion that once a general partner files for Chapter 7, the general partner loses its authorization to act for the partnership.

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

1

The Trustee has objected to Trustmark's motion on the grounds that § 554(b) requires Trustmark to show that the Chapter 7 estate (the Estate), which the Trustee administers, and not Trustmark, will be burdened if the Property is not abandoned. The Trustee further argues that the Court lacks sufficient evidence of the partnership's value and that, therefore, abandonment of the Estate's interest in the partnership would be premature. Additionally, the Trustee asserts that abandonment would be premature because it would preclude the Trustee from investigating any transfers made by the partnership to third parties which decreased the value of the partnership and thereby decreased the Estate's interest in the partnership.[2] The Trustee also points out that Trustmark has various alternatives under state law, such as the appointment of a receiver, which would be a more appropriate remedy at this stage of the proceeding.

For the reasons set forth below, the Court concludes that Trustmark's motion should be denied and that the Trustee's objection should be sustained.

## II. FINDINGS OF FACT

1. On February 3, 2009, Jolly Properties, Inc. (the Debtor) filed a voluntary Chapter 11 petition for relief. [Docket No. 1.]

2. On July 2, 2009, this Court issued an order converting the Debtor's Chapter 11 case to a case under Chapter 7 of the United States Bankruptcy Code. [Docket No. 152.]

3. On July 7, 2009, the Trustee was appointed as Chapter 7 Trustee for this case.

---

[2] Were the Trustee, after investigating these transfers, to conclude that the transfers were improper, presumably he would, on behalf of the Estate, take any action he could to recover those transfers—which would lead to an increase in the value of the Estate's interest in the Partnership, thereby leading to a greater distribution to creditors of the Estate. By way of one example only, the Trustee might file an involuntary Chapter 7 petition against the partnership so that the trustee of that estate could recover improper transfers and thereafter make distributions to creditors and equity interest holders of the partnership, including the Estate.

4. Prior to the conversion of the Debtor's case to Chapter 7, and according to the Debtor's Schedule B, the Debtor owned interests in certain limited partnerships, including a one percent (1.0%) equity interest in Hwy 90 Office Condominiums, L.P. (the Partnership), and a fifty percent (50.0%) development interest (collectively, the Estate's Interest). [Docket No. 170.] The Debtor was also the general partner of the Partnership.

5. The Property, which is 100% owned by the Partnership, is subject to a security interest held by Trustmark. [Docket No. 170.] Presently, four buyers have submitted contracts to purchase eight of the one-hundred-and-six (106) condominium units comprising the Property. These contracts are presently pending and, according to Trustmark, the closing on these contracts cannot take place because there is no general partner of the Partnership who is authorized to execute the appropriate documents to effectuate the transfer of title to the putative buyers. [Testimony of Reed Cook, Senior Vice President of Trustmark.] Trustmark alleges that the indebtedness which the Property secures exceeds the value of the Property and that, because the Property has no equity, it follows that the Partnership also has no value and that, therefore, the Estate's Interest is worthless. [Docket No. 170.]

6. On October 25, 2005, a Deed of Trust executed by the Partnership as grantor and Trustmark as beneficiary, was recorded under Fort Bend County Clerk's File No. 2005131556, granting Trustmark a security interest in the Property described as:

> Being 8.003 acres (348,612 square feet) tract of land being comprised of three separate tracts, all of Reserve "A" (6.426 acres) and Reserve "B" (1.536 acres) of Joshua Fellowship Church, a subdivision located in Fort Bend County, Texas according to the plat thereof recorded in Slide No. 2044B of the Plat Records of Fort Bend County, Texas and a 0.041 acre (1,798 square feet of land) tract of land being an area of questionable record title adjacent to the Westerly boundaries of afore said Reserves "A" and "B" and the Easterly right-of-way of Eldridge Road (FM 1876)(a variable right-

of-way per current TXDOT ROW map of FM 1876); said 8.003 acre tract of land being more particularly described by metes and bounds.

7. On July 31, 2007, a Deed of Trust executed by the Partnership, as grantor, and Trustmark, as beneficiary, was recorded under Fort Bend County Clerk's File No. 2007097896, granting to Trustmark a security interest in the property described as:

> 7.952 acres, being all of Restricted Reserve "A" Block 1, Willow Park Condominiums at Eldridge, according to the map or plat thereof, recorded under No. 20070053 of the Fort Bend Plat Records.

8. The Partnership has defaulted on the promissory notes secured by the foregoing deeds of trust, and the deeds of trust were posted for foreclosure on August 4, 2009. [Docket No. 170.] Trustmark is the present owner and holder of the above-described deeds of trust and the notes secured thereby.

9. There are presently eight earnest money contracts pending for the sale of individual condominium units, the proceeds from which would be paid to Trustmark to reduce the Partnership's indebtedness. Additionally, there are invoices due to contractors for work performed on behalf of the Partnership in connection with the on-going construction of the condominium units. However, Trustmark contends, and the Trustee does not dispute, that there is no person or entity legally authorized at present to execute any deeds to convey title to prospective buyers, or to execute documents necessary to pay contractors. [Docket No. 170.]

10. On July 21, 2009, Trustmark filed a Motion to Abandon Property of the Estate Pursuant to 11 U.S.C. §544(b)(sic), [Docket No. 169], and on July 23, 2009, Trustmark amended

this motion (the Motion to Abandon).³ [Docket No. 170.] Trustmark seeks an order from this Court requiring the Trustee to abandon the Estate's Interest.

11. On July 28, 2009, the Trustee filed an Objection to the Motion of Trustmark National Bank to Abandon Property of the Estate Pursuant to 11 U.S.C. §544(b)(sic) (the Objection). [Docket No. 177.]

12. On July 29, 2009, this Court held a hearing on the Motion to Abandon and the Objection. The only witness who testified at the hearing was Reed Cook, the Senior Vice President of Trustmark. The Court found this witness to be credible. During the hearing, several exhibits were introduced into evidence, including an appraisal of the Property prepared by CB Richard Ellis. [Trustmark's Ex. E.] The substance of Mr. Cook's testimony, with respect to the indebtedness owed to Trustmark, when compared with the value of the Property according to the appraisal, is that the Property has no equity.

### III. CONCLUSIONS OF LAW

**A.   Jurisdiction and Venue**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may be "a core proceeding under 28 U.S.C. §

---

³ Although both Trustmark, in its Motion to Abandon, and the Trustee, in his Objection, referenced § 544(b) of the Bankruptcy Code, this reference is erroneous, and should instead read § 554(b) of the Bankruptcy Code.

157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.     The Motion to Abandon**

Trustmark argues that abandonment of the Estate's Interest is proper pursuant to 11 U.S.C. § 554(b), which allows for the abandonment of any property of the bankruptcy estate that is burdensome, or that is of inconsequential value and benefit, to the estate. Trustmark argues that the Estate's Interest is of inconsequential value to the Estate because, according to the Partnership's balance sheet, the Property has no equity. Additionally, Trustmark argues that the Estate's Interest is burdensome because unless the Court orders abandonment, pending sales contracts associated with the Property will not be consummated. That is, Trustmark, as the holder of a lien on the Property as well as past due promissory notes secured by the Property, wants the contracts to be consummated so that the sale proceeds may be applied against the balance owed under the notes. Presently, there is no person authorized to sign the pending sales contracts on behalf of the Partnership, so, unless abandonment is ordered, Trustmark cannot collect on the sales proceeds.

**1.     Trustmark's reliance on 11 U.S.C. § 554(b) is misguided.**

Trustmark relies heavily on § 554(b) of the Bankruptcy Code to justify the abandonment of the Partnership. However, the Trustee argues, and the Court agrees, that Trustmark's reliance on § 554(b) is flawed. Section 554(b) reads, "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C.

§ 554(b). Trustmark argues that the Partnership is of inconsequential value and benefit to the Estate because, based on an appraisal of the Property, the amount of indebtedness which the Property secures exceeds the value of the Property. [Finding of Fact No. 12; Trustmark's Ex. E.] However, the Trustee contends that the Court has insufficient information to conclude that the Partnership, as a whole, has inconsequential value. Assuming, arguendo, that this Court accepts as true Trustmark's allegation that the Property has no equity, the Trustee emphasizes that the Partnership may nevertheless have equity because it may own one or more causes of action to recover improperly made transfers.

The Court concurs with the Trustee. It would be premature to conclude that the Partnership has no equity. The Trustee must have time to investigate any improper transfers that were made out of the Partnership prior to the Debtor's filing of its bankruptcy petition. *See* 11 U.S.C. § 704(a)(4) ("The trustee shall investigate the financial affairs of the debtor."); *In re Melenyzer*, 140 B.R. 143, 155-57 (Bankr. W.D. Tex. 1992) (explaining that it is a duty of the trustee to conduct a thorough investigation of all assets of the debtor and noting that this duty of diligence often conflicts with the goals of efficiency, but ultimately concluding that trustee should be given time to conduct a thorough investigation). Thus, because it is premature for this Court to conclude that the Estate's Interest is of inconsequential value and benefit to the Estate, the Motion to Abandon is premature and must be denied.

Alternatively, Trustmark argues that abandonment is proper under § 554(b) because the Estate's Interest is burdensome to Trustmark. Specifically, Trustmark argues that there are several contracts pending for the sale of individual condominium units owned by the Partnership, the proceeds of which would be paid to Trustmark to reduce the Partnership's indebtedness.

However, Trustmark argues that pursuant to § 4.02 of the Texas Revised Limited Partnership Act, neither the Debtor nor the Trustee has the authority to sign these sales contracts. Tex. Rev. Civ. Stat. art. 6132a-1, § 4.02(a)(4)(B) ("A person ceases to be a general partner of a limited partnership . . . [if] the general partner files a voluntary bankruptcy petition."); *West v. Seiffert (In re Houston Drywall, Inc.)*, No. 05-95161-H4-7, 2008 WL 2754526, at *26, n. 33 (S.D. Tex. 2008) (noting that a Chapter 7 trustee, as a matter of law, may not serve as the general partner of a debtor's partnership). Trustmark complains that the absence of a general partner to act on behalf of the Partnership burdens Trustmark in two respects: (1) Trustmark will lose the sale proceeds should the prospective buyers cancel their eight earnest money contracts due to their frustration that closing cannot be effectuated without an authorized person to sign for the Partnership; and (2) the Property's value could decline further due to the existence of the mechanic's, contractor's, or materialman's liens, further impairing the value of Trustmark's collateral. [Finding of Fact No. 9.] Therefore, Trustmark contends that abandonment under § 554(b) is proper because the Estate's Interest is burdensome to Trustmark.[4]

While the Court agrees that the absence of a general partner to sign the sales contracts hinders Trustmark's objective of reducing the indebtedness owed to it by the Partnership, the Court disagrees with Trustmark's interpretation of § 554(b). Section 554(b) clearly sets forth that "the court may order the trustee to abandon any property of the estate that is burdensome *to the estate*." 11 U.S.C. § 554(b) (emphasis added). Therefore, Trustmark's contention that the

---

[4] There is no question that upon abandonment, Mr. Jolly, the representative of the Debtor, would once again have the authority to sign contracts on behalf of the Partnership. *See Kane v. Nat'l Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) ("Property abandoned under § 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed."); *In re Middletown Metro Assocs.*, 225 B.R. 281, 282 (Bankr. D. Conn. 1998) (holding that after the trustee abandoned certain partnership interests to the pre-bankruptcy general partners, the general partners continued to operate the property). Trustmark presumes that Mr. Jolly would execute these contracts if this Court grants the Motion to Abandon. Although there is nothing in the record to show what Mr. Jolly would do, the Court assumes, for the purposes of this Opinion, that Trustmark's presumption is correct.

Trustee's retention of the Estate's Interest might jeopardize Trustmark's ability to recover from the sale of its collateral is unavailing. Section 554(b) permits forced abandonment only where the property is burdensome *to the estate*. Therefore, in this case, abandonment under this section would be improper without a showing that the Estate would be burdened by the Trustee's retention of the Estate's Interest at this time. No such showing has been made.

### 2. Abandonment is premature because the Trustee is entitled to an opportunity to investigate claims relating to the Partnership.

The Trustee also argues that abandonment would be premature because it would prevent him from investigating possible causes of action on behalf of the Estate relating to the Partnership.[5] The Court agrees.

It is the duty of the Trustee to account for the interests of creditors of the Estate. *See, e.g., Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 462 n. 8 (6th Cir. 1982) ("A trustee in bankruptcy or a debtor-in-possession, as a fiduciary, represents both the secured and unsecured creditors of the debtor."). Therefore, the Trustee's concern about preserving any potential causes of action for the benefit of creditors of the Estate is valid.

Moreover, abandoning property of the Estate "removes the property from the bankruptcy estate and causes the trustee to lose all interests, rights and control with respect to the abandoned property." *In re Grossinger's Assocs.*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995) (citing *In re Helms*, No. 91-2399, 1991 WL 284111, at *1 (E.D. La. 1991)). Further, the Fifth Circuit has determined that once a trustee abandons property, such abandonment is irrevocable. *In re Killebew*, 888 F.2d 1516, 1520 (5th Cir. 1989). Accordingly, the Trustee is understandably

---

[5] This Court makes no determination at this juncture whether the Trustee has standing to sue any third parties to whom the Partnership may have improperly transferred funds. If and when the Trustee brings such an action, this Court will decide the issue.

9

reluctant at this very early stage of this Chapter 7 case to abandon the Estate's Interest. This Court concludes that abandonment of the Estate's Interest is premature. The Trustee must be permitted to have a reasonable period of time to fulfill his fiduciary duties to creditors of the Estate by investigating any possible causes of action that would benefit these creditors before the Estate's Interest is abandoned.

### 3. Trustmark has alternative remedies available.

The Court further concludes that abandonment is not the proper remedy—at least not at this early stage—because there are other, more appropriate, alternatives readily available to Trustmark. First, Trustmark may request a state court to appoint a receiver for the Partnership—which, it must be emphasized, is *not* in bankruptcy and is therefore not protected by the automatic stay. Tex. Prac. & Rem. Code § 64.001(a)(2) ("A court of competent jurisdiction may appoint a receiver in an action by a creditor to subject any property or fund to his claim."). The appointment of a receiver would resolve Trustmark's concerns about the present absence of a person authorized to act for the Partnership to execute the pending sales contracts. *See* Tex. Civ. Prac. & Rem. Code § 64.031 ("Subject to the control of the court, a receiver may . . . make transfers"). A state-court-appointed receiver could legally sign the sales contracts and ensure that Trustmark receives the sale proceeds, thereby reducing the Partnership's indebtedness and helping Trustmark accomplish the same objectives that it seeks to accomplish by requesting this Court to order the Trustee to abandon the Estate's Interest. *See id.*

Alternatively, Trustmark is set to foreclose its liens pursuant to the deeds of trust that it holds on the Property. [Finding of Fact No. 8.] Upon foreclosure, Trustmark will own title to the Property and may thereafter take any action it wishes with respect to prospective buyers who

desire to purchase condominium units.[6] In sum, Trustmark has two viable alternatives that it may pursue other than seeking abandonment of the Estate's Interest in the Property.

## IV. CONCLUSION

The Court concludes that abandonment is not the proper remedy at this very early stage of this Chapter 7 case. Trustmark's reliance on 11 U.S.C. § 554(b) is misguided, as the statute refers to the burdensome effect of property on the estate itself, not on a specific creditor of the estate. Further, the Trustee must be given a reasonable period of time to investigate possible causes of action relating to improper transfers involving the Debtor, the Partnership, and third parties. It may well be that after the Trustee conducts his investigation, he will conclude that there are no causes of action to pursue; and, at this later time, abandonment of the Estate's Interest might be appropriate. However, abandonment at this juncture is premature. Finally, the Court notes that Trustmark has two alternative remedies available, apart from abandonment: seeking the appointment of a receiver in state court or simply proceeding to foreclose its liens on the Property.

For all of these reasons, the Court concludes that the Motion to Abandon should be denied and the Objection should be sustained. An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed on this 11th day of August, 2009.

Jeff Bohm
United States Bankruptcy Judge

---

[6] The record is unclear as to whether Trustmark, in fact, foreclosed upon the Property on August 4, 2009. [See Finding of Fact No. 8.]